## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

―――――――――――――――――――――――――――  )
                                )
**WINIFRED OWENS-HART,**         )
                                )
    **Plaintiff,**              )
                                )
        **v.**          )          **Civil No. 14-cv-00758 (APM)**
                                )
**HOWARD UNIVERSITY,**           )
                                )
    **Defendant.**             )
                                )
―――――――――――――――――――――――――――  )

### MEMORANDUM OPINION AND ORDER

Plaintiff Winifred Owens-Hart brings this action against Defendant Howard University for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.*, as well as constructive discharge.  Plaintiff asserts that she repeatedly requested—for thirty-seven years—that Defendant accommodate her occupational asthma by cleaning and ventilating its ceramics studio and attached office or by periodically allowing Plaintiff to work and teach from home.  Defendant purportedly ignored and denied these requests, ultimately forcing Plaintiff to retire because she could not work or teach in the ceramics studio.

Presently before the court is Defendant's Motion for Summary Judgment, in which Defendant contends that all the statutory claims Plaintiff raises are time barred and Plaintiff's constructive discharge claim is without merit.  After thorough consideration of the parties' arguments and the record, the court concludes that genuine issues of material fact preclude an entry of summary judgment on all Plaintiff's statutory claims, except as to those accommodation

requests made prior to September 11, 2012, for purposes of Plaintiff's ADA claim; those requests made prior to April 30, 2011, for Plaintiff's Rehabilitation Act claim; and those requests made prior to October 6, 2012, for Plaintiff's District of Columbia Human Rights Act claim. Genuine issues of material fact also prevent summary judgment as to Plaintiff's constructive discharge claim. Accordingly, the court grants in part and denies in part Defendant's Motion for Summary Judgment.

## I.  BACKGROUND

Plaintiff Winifred Owens-Hart worked at Defendant Howard University as a Professor of Ceramics for thirty-seven years. Throughout her tenure, Plaintiff taught and worked in Defendant's ceramics studio, which also contained her office. *See* Compl., ECF No. 1 [hereinafter Compl.], ¶ 8.[1] The process of creating ceramic art involves the use of hazardous chemicals, including silica. Use of such chemicals causes dust to accumulate on the floor unless properly mopped up, which can then become airborne if circulated through an improperly filtered ventilation system. *See* Pl.'s Mem. in Opp'n to Summ. J., ECF No. 44 [hereinafter Pl.'s Mem.], Ex. 2, ECF No. 44-2 [hereinafter Pl.'s Ex. 2], ¶ 4. Plaintiff alleges Defendant inadequately cleaned and ventilated its ceramics studio for the entirety of her tenure. *See* Compl. ¶ 9.

It is uncontested that Defendant's ceramics studio was non-compliant with the standards set by the Occupational Health and Safety Administration ("OSHA") and that, as a result of the studio's hazardous condition, Plaintiff developed occupational asthma. *See* Pl.'s Mem., Ex. 9, ECF No. 44-9; Pl.'s Mem., Ex. 18, ECF No. 44-18 [hereinafter Pl.'s Ex. 18]. Additionally, Defendant admits it was aware of Plaintiff's disability during the relevant time period. *See* Pl.'s Mem., Ex. 29, ECF No. 44-29 [hereinafter Pl.'s Ex. 29], ¶¶ 1–4. Plaintiff's occupational asthma

---

[1] Plaintiff's allegations about the ceramics studio's uncleanliness also extend to her office.

prevents her from engaging in athletic activities she used to enjoy and has curtailed her basic everyday activities. In turn, her overall physical condition has declined. Pl.'s Ex. 2 ¶ 45.

Plaintiff first requested an accommodation for her asthma on March 12, 2009, when she notified then-Chair of the Art Department, Dr. Gwendolyn Everett, of her disability and requested the studio be properly cleaned and maintained.[2] *See* Def.'s Mot. for Summ. J., ECF No. 38 [hereinafter Def.'s Mot.], at 4; Def.'s Mot., Ex. 4, ECF No. 38-6; Pl.'s Ex. 29 ¶ 5. Plaintiff was unsatisfied with Defendant's response and, by mid-April 2009, believed Defendant had denied her request for accommodation. *See* Def.'s Mot. at 5; Pl.'s Ex. 2 ¶ 9. Plaintiff submitted a second request for accommodation to Dr. Everett one year later, in April 2010, including a letter from her treating physician, specifically asking that the studio receive daily wet mopping and that high-efficiency particulate air (HEPA) filters be installed and maintained. *See* Def.'s Mot., Def.'s Mem. of Points & Authorities, ECF No. 38-1 [hereinafter Def.'s Mem.], at 3; Pl.'s Ex. 2 ¶ 15. Plaintiff submitted additional requests in June, July, and September, 2010, that the studio be cleaned properly and better ventilated, particularly by appropriately maintaining the HVAC system and filters. *See* Pl.'s Ex. 2 ¶¶ 17–19. She maintains that "the request was not fulfilled and the [studio] . . . remained dirty." *See* Pl.'s Ex. 2 ¶ 19.[3] Two years later, on June 20 and July 6, 2012, Plaintiff again submitted her request that the studio be appropriately cleaned and supported her request with

---

[2] Plaintiff's sworn declaration states that she first requested the studio be cleaned on January 28, 2008. *See* Pl.'s Ex. 2 ¶ 3. Defendant argues, however, that Plaintiff's first request was on March 12, 2009, when Plaintiff submitted a letter from her treating physician, Dr. Kingslow, along with her request to Dr. Everett that the studio be cleaned. *See* Def.'s Mem. at 2 & n.2. The court accepts the later date for purposes of this summary judgment analysis because a later-in-time date is more favorable to Plaintiff, the non-moving party, whose claims are alleged to be untimely. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (explaining that, on summary judgment, the court takes the facts in the light most favorable to the nonmoving party). As explained below, *see infra* III.A, whether Plaintiff's first request was on January 28, 2008, or March 12, 2009, has no bearing on the court's ruling.

[3] Plaintiff does acknowledge that the ceramics studio itself was periodically cleaned, but asserts that it was never cleaned adequately or in accordance with OSHA standards. She maintains that her office was never OSHA-compliant. *See* Pl.'s Ex. 29 ¶ 6. At no point in its Motion does Defendant claim that either the studio or the office were cleaned according to OSHA standards.

a letter from her treating pulmonologist, Dr. Jeff Hales, who recommended that Defendant install air purification systems with HEPA filters in both the studio and office. *See* Pl.'s Ex. 2 ¶¶ 20–21; Def.'s Mot., Ex. 6, ECF No. 38-8.

Plaintiff's requests continued during the fall 2012 semester. On October 4, 2012, Plaintiff notified the Chair of the Art Department, Dr. Tony McEachern, former-Chair Dr. Everett, and others that the studio was still not being properly cleaned; the filters for the HVAC system were dirty and had to be regularly changed; and the floor was covered in a film of silica dust, which could only be remedied by daily mopping. *See* Pl.'s Mem., Ex. 4, ECF No. 44-4 [hereinafter Pl.'s Ex. 4] (with pictures of the filters and studio floor attached); Pl.'s Ex. 2 ¶ 22. Although Dr. Everett acknowledged that it was necessary to mop the floors in order to properly clear the studio of silica dust, daily mopping still had not begun one month later. *See* Pl.'s Mem., Ex. 5, ECF No. 44-5; Pl.'s Mem., Ex. 7, ECF No. 44-7. Plaintiff repeated her request that the studio be mopped daily on November 3, 2012, again without successful response. *See* Pl.'s Ex. 2 ¶ 24.

Plaintiff remained persistent in her requests for accommodation. On December 7, 2012, Plaintiff submitted a comprehensive list of "observations and suggestions" to properly clean and ventilate the studio. *See* Pl.'s Mem., Ex. 8, ECF No. 44-8 [hereinafter Pl.'s Ex. 8]. The list included, but was not limited to, annually sealing the floor, daily mopping, installing HEPA filters in the HVAC system and replacing them on a monthly basis, and implementing an air exchange system and mechanical air cleaning system in the glaze chemical room.[4] *See id.* On December 20, 2012, Christopher Calhoun, an administrative director at Howard University, wrote that he would not authorize monthly replacement of the HEPA filters, but he would replace filters that

---

[4] Defendant purchased the HEPA filters for the HVAC system and one HEPA air purification system, although it is unclear as to precisely when those purchases were made and the items installed; the record indicates sometime between 2012 and 2013. *See* Def.'s Mot., Ex. 1, ECF No. 38-3, at 30–32; Def.'s Reply, ECF No. 45, Ex. 1, ECF No. 45-1; Pl.'s Mem., Ex. 25, ECF No. 44-25.

had not been changed in several years.  *See* Pl.'s Mem., Ex. 27, ECF No. 44-27 [hereinafter Pl.'s Ex. 27].[5]  He also represented that repairs to the broken exhaust motor on the HVAC system were in progress.  *See id.*

Plaintiff submitted an updated version of her list of "observations and suggestions" on January 21, 2013, noting in red the few items that had been addressed (e.g., sink repair, new drop ceiling in the main studio), in comparison to the extensive list of requested cleanings and repairs that remained outstanding.  *See* Pl.'s Mem., Ex. 12, ECF No. 44-12 [hereinafter Pl.'s Ex. 12].  Of the twenty-four items Plaintiff highlighted as requiring attention, Plaintiff claims only four were eventually addressed.  *See* Pl.'s Ex. 2 ¶ 25.  Among those items never addressed were the proper washing of the studio walls, ceilings, storage cabinets, fixtures, and office to remove silica dust residue; the sealing of the studio and office floors; and storage of the chemicals in airtight containers.  *See* Pl.'s Ex. 12.

Plaintiff began to request leave to work from home and teach remotely as a result of the studio's condition.  She first requested to work from home during a meeting with her immediate supervisor, Dr. McEachern, on January 22, 2013.  *See* Pl.'s Ex. 2 ¶ 29.  She supported her request with a letter from her pulmonologist, Dr. Hales, who wrote that it was "medically necessary that she be removed from her current work environment" because "[c]ontinued exposure to the[] noxious chemicals and dusts [in the ceramics studio] w[ould] cause continued deterioration of her lung health."  Pl.'s Mem., Ex. 11, ECF No. 44-11; Pl.'s Ex. 2 ¶ 29.  At a second meeting with Dr. McEachern on January 29, 2013, Plaintiff made the same request, provided additional letters from her doctors, and also submitted a proposal for teaching her ceramics course online, using her home studio.  *See* Pl.'s Ex. 2 ¶ 30.  By mid-February, Plaintiff had received no response to her

---

[5] Plaintiff was not included on this email chain.

January requests to work from home.  She also had submitted additional requests, on February 7 and February 14, 2013, that the studio be properly cleaned to accommodate her asthma.  *See* Pl.'s Mem., Ex. 14, ECF No. 44-14; Pl.'s Ex. 2 ¶¶ 32–33.  Plaintiff submitted additional, similar requests for cleaning on March 14 and April 14, 2013.  *See* Pl.'s Ex. 2 ¶¶ 35–36.  On May 3, 2013, Plaintiff submitted, through her attorney, another request to have the studio cleaned or to be permitted to work remotely in light of the studio's condition.  *See id.* ¶ 38; Pl.'s Mem. at 7; Pl.'s Mem., Ex. 17, ECF No. 44-17 [hereinafter Pl.'s Ex. 17].  She received no reply.  Pl.'s Ex. 2 ¶ 38; Pl.'s Mem. at 11.

In response to a formal complaint made by Plaintiff, OSHA investigated Defendant's ceramics studio on December 5, 2012, and released its final report on the studio's condition on May 30, 2013.  Pl.'s Ex. 18.  The agency concluded, among other things, that employees working in the ceramics studio were exposed to hazardous chemicals, including "silica and products that contain lead, chromium, and other hazardous ingredients"; employees were not provided the "proper personal protective equipment" because they were using masks intended "for common household dirt"; and housekeeping in the studio was inadequate because "[d]ebris from products being used in the studio was observed throughout floor, work, chairs, and shelf surfaces."  *Id.* at 1–2.  OSHA issued Defendant several citations as a result of its findings and imposed $33,000 in penalties.  *Id.* at 1–2, 8–20.

Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 8, 2013, alleging that she "suffer[s] discrimination in violation of the Americans with Disabilities Act [because] Howard University continues to deny [her] the reasonable accommodation of a safe work environment."  Def.'s Mot., Ex. 2, ECF No. 38-4 [hereinafter Charge].

Plaintiff subsequently renewed her requests for accommodation with Defendant in anticipation of and during the fall 2013 semester. Plaintiff had unrelated surgery in July 2013, which prevented her from being in the studio for several months. *Cf.* Pl.'s Ex. 29 ¶¶ 14–17. Although Plaintiff's surgeon cleared her to return to work on October 1, 2013, *see* Def.'s Mem., Ex. 7, ECF No. 38-9, Plaintiff's pulmonologist recommended she not return before December 31, 2013, because the studio's condition could trigger Plaintiff's asthma and cause her sutures to rupture, *see* Pl.'s Mem., Ex. 19, ECF No. 44-19; Pl.'s Ex. 2 ¶¶ 40, 42. In August 2013, Plaintiff faxed her surgeon's recommendation to Defendant and requested leave to teach a "hybrid" course with a colleague, in which part of the course would be taught online and part would be taught in Defendant's studio.[6]  *See* Pl.'s Ex. 2 ¶ 40; Pl.'s Mem., Ex. 1, ECF No. 44-1, at 8–9; Def.'s Mem., Ex. 8, ECF No. 38-10 [hereinafter Def.'s Ex. 8]. Plaintiff began teaching the hybrid course in the fall 2013 semester, even though she received no specific response to her August 22, 2013, letter or a formal review of her January 2013 online course proposal. *See* Def.'s Ex. 8; Pl.'s Ex. 2 ¶ 43; Pl.'s Ex. 29 ¶ 5; Pl.'s Mem., Ex. 22, ECF No. 44-22 [hereinafter Pl.'s Ex. 22].

Meanwhile, Plaintiff continued to communicate with Dr. McEachern about her need for accommodation. On October 16, 2013, Dr. McEachern wrote Plaintiff in response to her September notice that she would be unable to teach in the ceramics studio and advised that Plaintiff seek disability or medical leave. *See* Pl.'s Mem., Ex. 21, ECF No. 44-21 [hereinafter Pl.'s Ex. 21]. Dr. McEachern's letter did not address Plaintiff's requests to have the studio cleaned. *See id.*; Pl.'s Ex. 2 ¶ 42 ("I was given no assurance that my workplace would be adequately cleaned and

---

[6] Plaintiff describes her August 22, 2013, letter to Dr. McEachern as a "request" to be permitted to teach an online course in light of her occupational asthma. The court is skeptical that this letter qualifies as a request, as it simply states: "Please be advised that I am Blackboard and Distance Learning Certified and will be teaching hybrid ceramics courses this semester." Def.'s Ex. 8. However, Defendant does not advance any argument that this letter was not a request for accommodation. Accordingly, taking the facts in the light most favorable to Plaintiff, the court accepts for purposes of *this* motion that the August 22, 2013, could be a request for accommodation.

ventilated so that I could safely work in the studio or my office").   Plaintiff responded to Dr. McEachern's letter on October 28, 2013, explaining that she felt medical or disability leave, as described in the Faculty Handbook, did not appropriately address her situation and seeking advice on how to proceed.  *See* Pl.'s Ex. 22.

Plaintiff received a formal denial of her request to teach a hybrid course—based on her January 2013 online-course proposal—on November 18, 2013.  *See* Pl.'s Mem., Ex. 23, ECF No. 44-23 [hereinafter Pl.'s Ex. 23].  Dr. McEachern's November 18, 2013, letter admonished Plaintiff for proceeding with teaching the hybrid course "without going through a proper review and approval process," but did not address Plaintiff's requests to have the studio cleaned and ventilated. *See id.*; Pl.'s Ex. 2 ¶ 40.

On December 4, 2013, Plaintiff resigned from her position "due to [Defendant's] long-standing[] history of repeated unwillingness to maintain a clean and safe teaching and office facility and to acknowledge [Plaintiff's] multiple requests to make reasonable accommodations due to [her] occupational asthma," particularly given that her "asthma was verified to be causally connected to [her] employment at Howard University's Art Department Ceramics Studio."  Pl.'s Ex. 2 ¶ 44; *accord* Pl.'s Mem. at 2; Compl. ¶ 24; Def.'s Mot., Ex. 11, ECF No. 38-13.

Plaintiff amended her EEOC Charge of Discrimination in January 2014 to include allegations that, since the time of her original Charge, Defendant had continued to discriminate against her by failing to adequately clean her workspace and "refusing to allow [her] to work from home where [her] disability can be controlled."  Def.'s Mot., Ex. 3, ECF No. 38-5 [hereinafter Am. Charge].   As a result, Plaintiff alleged, she "was forced to retire due to these intolerable conditions."  *Id.*

Plaintiff received a Right to Sue Letter from the EEOC on January 30, 2014, and filed suit in this court on April 30, 2014.  *See id.*; Compl.  Plaintiff's Complaint alleges, in relevant part, that Defendant's failure to accommodate her occupational asthma, either by maintaining the safety of the ceramics studio and office or allowing her to work remotely and teach online, violated the Americans with Disabilities Act, the Rehabilitation Act, and the District of Columbia Human Rights Act, as well as caused her constructive discharge.  *See* Compl. ¶¶ 1, 25.[7]

Defendant filed a Motion for Summary Judgment on all Plaintiff's claims, to which the court now turns.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015).

In assessing a motion for summary judgment, the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  To defeat a motion for summary judgment, the nonmoving party must put forward "more than mere unsupported allegations or denials"; its opposition must be "supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial" and that a

---

[7] Plaintiff also brought a claim for defamation, which the court dismissed earlier in this litigation when ruling on Defendant's Motion to Dismiss.  *See* Order, ECF No. 14 (denying in part and granting in part Def.'s Mot. to Dismiss, ECF No. 8).

reasonable jury could find in its favor.  *Elzeneiny*, 125 F. Supp. 3d at 28 (citing Fed. R. Civ. P. 56(e)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## III.   ANALYSIS

### A.   Plaintiff's Claim under the Americans with Disabilities Act

Plaintiff seeks relief under the Americans with Disabilities Act of 1990 (ADA) for Defendant's failure to accommodate her occupational asthma.  The ADA makes it illegal to discriminate against "a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[8] An employer's failure to make reasonable accommodations for an employee's known disability is an act of discrimination under the ADA, unless providing an accommodation would cause an "undue hardship" on the employer's business operations. *See id.* § 12112(b)(5)(A).  To state a plausible failure-to-accommodate claim under the ADA, the plaintiff must demonstrate, by a preponderance of the evidence, that (1) "she was an individual who had a disability within the meaning of the statute"; (2) "the employer had notice of her disability"; (3) "with the reasonable accommodation she could perform the essential functions of her job"; and (4) "the employer refused to make such accommodations."  *Floyd v. Lee*, 968 F. Supp. 2d 308, 315–16 (D.D.C. 2013) (quoting *Etheridge v. FedChoice Fed. Credit Union*, 789 F. Supp. 2d 27, 35 (D.D.C. 2011)).  Defendant does not challenge Plaintiff's claim on any of these four elements.  Instead, Defendant argues only that Plaintiff's claim is untimely.

The text of the ADA does not set out a governing statute of limitations.  Instead, the ADA adopts the procedural provisions of Title VII of the Civil Rights Act of 1964, which makes the

---

[8] The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

applicable statute of limitations for an ADA claim 180 days from the date of the alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1); *Elzeneiny*, 125 F. Supp. 3d at 34. That period is extended to 300 days if the jurisdiction has a Fair Employment Practices ("FEP") agency with jurisdiction over the charges of discrimination. 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13(a)(4)(ii)(A); *Featherston v. District of Columbia*, 910 F. Supp. 2d 1, 5 (D.D.C. 2012). In the District of Columbia, the District of Columbia Office of Human Rights ("DCOHR") is an FEP agency, which means an EEOC filing is considered timely if received within 300 days of the discrimination alleged therein. *See Featherston*, 910 F. Supp. 2d at 5. Claims filed with the EEOC are automatically cross-filed with the DCOHR. *Hammel v. Marsh USA Inc.*, 79 F. Supp. 3d 234, 239–40 (D.D.C. 2015).

For purposes of a failure-to-accommodate claim, the statute begins to run from the date the discriminatory act "occurred"—the date the defendant failed to provide the plaintiff with a reasonable accommodation for her disability, *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002), "so long as the plaintiff knew or had reason to know of the denial," *Floyd*, 968 F. Supp. 2d at 326. *See also Long v. Howard Univ.*, 512 F. Supp. 2d 1, 14 (D.D.C. 2007) (holding that "a claim accrues under the Rehabilitation Act and the ADA based on the discovery rule applied in discrimination cases generally—that is, when the plaintiff knew or had reason to know of the injury serving as the basis for his claim" (internal quotation marks omitted)), *aff'd*, 550 F.3d 21 (D.C. Cir. 2008). "A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Morgan*, 536 U.S. at 110. "When the denial occurred, and when the plaintiff knew or had reason to know of it, are . . . questions of fact." *Floyd*, 968 F. Supp. 2d at 326.

Here, Plaintiff filed her Charge of Discrimination with the EEOC on July 8, 2013. Accordingly, that complaint was timely—with respect to Plaintiff's ADA claim—only as to discriminatory acts that occurred on or after September 11, 2012. *See Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007) (per curiam), *abrogated on other grounds by Green v. Brennan*, 578 U.S. ___, 136 S. Ct. 1769 (2016). Plaintiff's January 7, 2014, amendment to her Charge of Discrimination—that Defendant failed to accommodate her occupational asthma by allowing her to work periodically from home, ultimately forcing her to retire—did not advance a new theory of relief, but rather, "alleg[ed] additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1601.12. Therefore, the amendment relates back to the date of the original filing. *See id.*

Defendant argues that Plaintiff's ADA claim is untimely because the only cognizable request for accommodation was her *first* request, on March 12, 2009. Defendant cites to Plaintiff's deposition, in which Plaintiff acknowledges that her March 2009 request was denied as of April 2009. *See* Def.'s Mem. at 3. Based on that evidence, Defendant contends that any requests after April 2009 were not cognizable and, therefore, untimely filed. *See id.* at 6–8; Def.'s Reply, ECF No. 45, at 8–9. Plaintiff, on the other hand, asserts that her requests were timely because they were made and formally or constructively denied within 300 days of when she filed her Charge of Discrimination. *See* Pl.'s Mem. at 14.

The parties' positions revolve around whether a plaintiff may reset the statute of limitations on her claim by repeating her request for accommodation of the same disability. In *National Railroad Passenger Corp. v. Morgan*, the Court explained that

> discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each

discrete discriminatory act starts a new clock for filing charges
alleging that act. The charge, therefore, must be filed within the
180- or 300-day time period after the discrete discriminatory act
occurred. The existence of past acts and the employee's prior
knowledge of their occurrence, however, does not bar employees
from filing charges about related discrete acts so long as the acts are
independently discriminatory and charges addressing those acts are
themselves timely filed.

536 U.S. at 113. Although *Morgan* clarified that the continuing violations doctrine could not

extend the viability of an untimely failure-to-accommodate claim, it left unclear whether a plaintiff

could repeat her prior request for accommodation based on the same disability, trigger a new act

of discrimination when that request is denied, and then timely file suit. Courts have splintered in

their treatment of the timeliness of claims premised on such repeat requests. *See Floyd*, 968 F.

Supp. 2d at 324–25 (collecting cases).

Defendant cites *Stewart v. District of Columbia*, No. 04-1444, 2006 WL 626921 (D.D.C.

Mar. 12, 2006), and *Morgenstein v. Morgan Stanley DW Inc.*, No. 05-2123, 2007 WL 315090

(D.D.C. Jan. 31, 2007), for the proposition that the statute of limitations does not reset when the

same accommodation is later requested and again denied. *See* Def.'s Mem. at 6–8; Def.'s Reply

at 8–9. Plaintiff contends that *Stewart* and *Morgenstein* are in conflict with the D.C. Circuit's

holding in *Mayers* and, therefore, do not reflect the present state of the law. *See* Pl.'s Mem. at 12–

13. The court concludes that Plaintiff has the better argument because Defendant's position fails

to account for developments in the law after *Morgenstein*.

In *Stewart*, a hospital employee who suffered from symptomatic schizophrenia

unsuccessfully requested reassignment to a different part of the hospital for the first time in January

2002. *See* 2006 WL 626921, at *1–2. As a result of the hospital's failure to provide the

accommodation, the plaintiff's psychological health deteriorated, prompting her again to seek the

same accommodation in early October 2002. *Id.* at *1. Her employer made no effort to transfer

her and, soon thereafter, she attempted suicide. *Id.* In June 2003, the plaintiff filed a charge of discrimination with the EEOC, alleging that her symptoms had worsened as a result of the defendant's initial refusal to accommodate her disability and, by October 2002, "her aggravated disability required a wholly different level of scrutiny and interactive engagement [from her employer]." *Id.* at *2, 5 (internal quotation marks omitted). Her employer's failure to accommodate her disability in October 2002, she argued, made her EEOC charge timely. *See id.* The court disagreed, however, and dismissed the plaintiff's ADA claim as untimely on the ground that the statute of limitations began to run when the plaintiff's first request was denied in January 2002. The court held that the plaintiff's "claim that [the] [d]efendant refused to accommodate her disability resulted in increased symptoms simply cannot restart the statute of limitations." *Id.* at *6. One year later, in *Morgenstein*, the court read *Stewart* broadly to mean that the statute of limitations begins to run on the date of the *first* act of discrimination, and a plaintiff's failure to timely file with respect to that original date cannot be undone by having timely filed with respect to the denial of a subsequent, repeat request for the same accommodation based on the same disability. *See Morgenstein*, 2007 WL 315090, at *3–4. Defendant urges the court to adopt *Morgenstein*'s reading of *Stewart*.

Subsequent developments in the case law, however, convince the court that *Stewart* and *Morgenstein* are inapplicable. Since the time those cases were decided, several federal appellate courts have held that "a new limitations clock begins running each time that a request for accommodations is made anew and denied again." *See Floyd*, 968 F. Supp. 2d at 324. Rather than focusing on when the first act of discrimination occurred, these courts reason that each denial of a request for disability accommodation constitutes a discrete act of discrimination, triggering the statute of limitations anew. *See id.* at 325–26. Specifically, "an employee who renews his request

14

for particular accommodations may bring suit based on a new 'discrete act' of discrimination if the employer again denies his request" because "each denial constitute[s] a discrete act that . . . [forms] the basis for a separate claim of discrimination and carrie[s] with it a new statute of limitations." *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 131, 132 (1st Cir. 2009); *accord Hill v. Hampstead Lester Morton Court Partners LP*, 581 F. App'x 178, 180–81 (4th Cir. 2014) (per curiam) (applying the same principles to a claim under the Rehabilitation Act); *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003) (same). "[C]hanges in either the employee's condition or the workplace environment" are not necessary for the statute of limitations to reset. *Floyd*, 968 F. Supp. 2d at 324 (quoting *Tobin*, 553 F. 3d at 133). Instead, "the 'pivotal question' [is] simply 'whether the employee made a specific request for accommodations that was denied during the statutory period.'" *Id.* (alterations adopted) (quoting *Tobin*, 553 F.3d at 133).

This development in jurisprudence is not without limit. A new request for the same accommodation will restart the statute of limitations clock, but a mere request for reconsideration of a prior denial will not. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 261 n.15 (1980) ("Mere requests to reconsider, however, cannot extend the limitations periods applicable to the civil rights laws."); *Long*, 512 F. Supp. 2d at 17. The court's focus must be on discerning whether the facts presented reflect a situation "in which the employer commits multiple acts, each of which is independently discriminatory," or one "in which an employee attempts to rely on either the ongoing effects of the employer's single discriminatory act or the employee's efforts to obtain reversal of that singular act of alleged discrimination." *Tobin*, 553 F.2d at 131.

Applying these principles here, the court cannot enter summary judgment in Defendant's favor because Plaintiff made several requests for accommodation between September 11, 2012, and July 8, 2013, that were denied, and there remains a genuine issue of material fact as to whether

Plaintiff's requests were new requests for the same accommodation or mere requests for reconsideration of a prior denial. That question is central to determining whether Plaintiff's ADA claim is time barred.

A reasonable factfinder could conclude Plaintiff's multiple requests for the studio to be cleaned between September 11, 2012, and July 8, 2013, each constituted a new, independent request for accommodation. The evidence presented reflects that Plaintiff repeatedly asked to have the studio properly cleaned and ventilated during that time period, but she either received no response or her request was affirmatively denied. Plaintiff submitted requests to have the studio cleaned on October 4, 2012; November 3, 2012; and December 7, 2012, even providing an extensive list of recommendations based on her professional experience. *See* Pl.'s Ex. 2 ¶ 24; Pl.'s Ex. 4; Pl.'s Ex. 8. Plaintiff made an additional request for cleaning on January 21, 2013, including with that request a redlined copy of her updated list of "observations and suggestions" to note the many items that had yet to be addressed. She also made requests on February 7, 2013; February 14, 2013; March 14, 2013; April 14, 2013; and May 3, 2013. *See* Pl.'s Ex. 2 ¶¶ 25, 32–33, 35–36, 38; Pl.'s Ex. 12. Moreover, on May 30, 2013, OSHA cited Defendant for non-compliant, hazardous conditions in the ceramics studio during the time period when Plaintiff was making these requests. *See* Pl.'s Ex. 18. All these requests came after September 11, 2012—the outer limit of the 300-day limitations period—and three years and six months after Defendant made her initial request for accommodation on March 12, 2009.[9] That extended lapse of time alone could cause a reasonable factfinder to conclude that the requests Plaintiff made to clean and upgrade the studio after September 11, 2012, were not mere requests for reconsideration of the denial of her

---

[9] Defendant does not argue that the requests for accommodation Plaintiff submitted after September 11, 2012, were mere requests for reconsideration of the requests she made in the summer of 2012. Accordingly, the court passes no judgment on the relationship, if any, between the requests made in the summer of 2012, and those made after September 11, 2012.

initial request, but were independent requests for the same accommodation, the denial of which triggered a new limitations period.

The same is true of Plaintiff's multiple requests to work from home.  Plaintiff made her initial request to work remotely on January 22, 2013, and made subsequent requests on January 29 and May 3, 2013.  Defendant denied them all.  *See* Pl.'s Ex. 2 ¶¶ 29–30, 38; Pl.'s Ex. 17.  Given that Plaintiff's request to work from home came nearly four years after her initial demand for accommodation and was a request for a *different* kind of accommodation—working remotely versus cleaning the studio and office—a reasonable factfinder could conclude that her requests to work from home were not mere requests for reconsideration, but were new requests, the denial of which constituted discrete acts of discrimination.  Accordingly, her administrative complaints regarding those denials would have been timely filed.

In sum, the record reflects that Plaintiff made multiple requests for the studio to be properly cleaned, or to be permitted to work from home, between September 11, 2012, and July 8, 2013.  Additionally, Plaintiff properly amended her Charge to reflect additional facts related to Defendant's non-accommodation of her asthma—namely, Defendant's refusal to allow her to teach an online course rather than an in-person course, which caused her forced retirement.  Because these denied requests could constitute new requests for accommodation, rather than requests for reconsideration of a prior denial of accommodation, summary judgment is inappropriate at this juncture.

Accordingly, the court grants in part and denies in part Defendant's Motion for Summary Judgment as to Plaintiff's claim under the ADA.  The court grants Defendant's motion as to any request for accommodation that Plaintiff made prior to September 11, 2012, because those requests are time barred.  *See Floyd*, 968 F. Supp. 2d at 324.  The court otherwise denies Defendant's

Motion because Plaintiff has put forward sufficient evidence to show there is a genuine issue of material fact as to the character of those requests denied between September 11, 2012, and July 8, 2013, and those requests included in the Amended Charge.

**B.      Plaintiff's Claim under the Rehabilitation Act**

Plaintiff also seeks relief under the Rehabilitation Act ("RA") for Defendant's alleged failure to accommodate her occupational asthma.   The RA precludes employers in receipt of federal funds from discriminating against otherwise qualified employees with a disability. 29 U.S.C. § 794.  Failing to accommodate an employee's disability is an act of discrimination.   *Id.* § 705(9)(B); 42 U.S.C. § 12112(b)(5)(A).   The elements of a failure-to-accommodate claim are the same under both the ADA and the RA.   *See* 29 U.S.C. § 791(f); *Martin v. District of Columbia*, 78 F. Supp. 3d 279, 317–18 (D.D.C. 2015).   As with Plaintiff's ADA claim, Defendant does not dispute whether Plaintiff can satisfy the elements.   Rather, Defendant again argues that Plaintiff's RA claim is time barred.

Neither the RA nor Title VI of the Civil Rights Act of 1964—to which the Rehabilitation Act directs the reader for its "remedies, procedures, and rights," *see* 29 U.S.C. § 794a(a)(2)—sets forth a statute of limitations.   *Hatter v. Wash. Metro. Area Transit Auth.*, 105 F. Supp. 3d 7, 9 (D.D.C. 2015).   As such, courts draw the applicable statute of limitations for an RA claim from the most analogous state statute.   *See Alexander v. Wash. Metro. Area Transit Auth.*, 826 F.3d 544, 551 (D.C. Cir. 2016) (per curiam).   In this jurisdiction, it is not settled whether the most analogous state statute is the statute for personal injury claims, D.C. Code § 12-301(8), or the District of Columbia Human Rights Act, D.C. Code § 2-1403.16(a).   *See Alexander*, 826 F.3d at 551; *compare, e.g.*, *Jaiyeola v. District of Columbia*, 40 A.3d 356, 362–69 (D.C. 2012) (holding that the statute of limitations for an RA claim should be one year, drawn from the DCHRA), *with, e.g.*,

*Gordon v. District of Columbia*, 605 F. Supp. 2d 239, 244–45 (D.D.C. 2009) (holding that the statute of limitations for an RA claim should be three years, drawn from the personal injury statute). Here, however, the court need not determine which state statute is most analogous to the RA because the parties agree that the applicable statute of limitations is three years. Def.'s Mem. at 9; Pl.'s Mem. at 14; *cf. Hatter*, 105 F. Supp. 3d at 9–10 (discussing division amongst the courts but accepting statute of limitations as one year, based on parties' agreement that the DCHRA was the most analogous state statute).

Plaintiff filed suit on April 30, 2014, which makes her RA claim timely as to any discriminatory act that occurred on or after April 30, 2011. Although Defendant contends the statute of limitations began to run on Plaintiff's claim in April 2009, when Defendant had failed to implement Plaintiff's first request for accommodation, that argument fails for the reasons discussed above. *See supra* II.A; *cf. Kennedy v. Gray*, 83 F. Supp. 3d 385, 389–90 (D.D.C. 2015) (explaining that courts evaluate RA and ADA claims using the same standard); *contra* Def.'s Mem. at 9. Instead, the court finds there is a genuine dispute of material fact as to the timeliness of Plaintiff's RA claim, because a reasonable factfinder could conclude that Plaintiff's requests for accommodation between June 20, 2012 and January 30, 2014—requests that plainly arose after April 30, 2011—were new requests for the same accommodation, the denial of which constituted discrete acts of discrimination occurring within the limitations period. Therefore, the court denies Defendant's Motion as to Plaintiff's RA claim, except insofar it pertains to claims arising from denials of accommodation occurring before April 30, 2011.

### C.      Plaintiff's Claim under the District of Columbia Human Rights Act

Plaintiff also seeks relief under the District of Columbia Human Rights Act ("DCHRA"). The DCHRA makes it illegal for employers to discriminate against their employees on the basis

of disability and provides a cause of action for aggrieved individuals to bring suit within one year of the offending conduct.  *See* D.C. Code §§ 2-1402.11(a), 2-1403.16.  The statute of limitations for a DCHRA claim tolls for the length of time that the plaintiff has a timely filed charge pending before the D.C. Office of Human Rights ("DCOHR").  *See Rush v. Fed. Nat'l Morg. Ass'n*, No. 15-1569, 2016 WL 5349207, at *8 (D.D.C. Sept. 23, 2016); *Hammel*, 79 F. Supp. 3d at 239–41. "Pursuant to the worksharing agreement between the DCOHR and the EEOC, the EEOC's issuance of a right to sue notice automatically results in the DCOHR's termination of the case based on administrative convenience, enabling the plaintiff to file suit under the DCHRA." *Hammel*, 79 F. Supp. 3d at 240–41 (alteration adopted and internal quotation marks omitted).

The statute of limitations on Plaintiff's DCHRA claim began to run on the date Plaintiff discovered Defendant would not accommodate her occupational asthma.  *See Peterson v. Archstone*, 925 F. Supp. 2d 78, 85 (D.D.C. 2013) (explaining that the DCHRA statute of limitations begins to run "from the occurrence or the discovery of the discriminatory act"), *aff'd per curiam*, 595 F. App'x 1, 2 (D.C. Cir. 2015) (mem.).  The statute tolled on July 8, 2013, when Plaintiff filed her EEOC Charge, and it did not resume until January 30, 2014, when the EEOC issued its Right to Sue letter.  *See Hammel*, 79 F. Supp. 3d at 240–41; Am. Charge.  Thus, taking into consideration the time during which the statute of limitations was tolled, and counting the ninety days that passed before Plaintiff filed suit, Plaintiff's DCHRA claim could rest on any act of discrimination that occurred, or of which Plaintiff became aware, on or after October 6, 2012.

As the foregoing discussion makes clear, Plaintiff made several requests for accommodation after October 6, 2012, that Defendant either ignored or expressly denied.  *See supra* II.A; Pl.'s Ex. 23.  Once more, Defendant contends the statute of limitations began to run in April 2009, when Defendant first denied Plaintiff's request for accommodation, and, as such,

Plaintiff needed to file her DCHRA claim by April 2010.  *See* Def.'s Mem. at 8.  Defendant also asserts that tolling does not apply because Plaintiff's July 8, 2013, filing with the EEOC was untimely.  However, because the same standard governs RA, ADA, and DCHRA claims alike, Defendant's arguments are unavailing for the same reasons identified above, except as to those denials that occurred before October 6, 2012.[10]  *See Kennedy*, 83 F. Supp. 3d at 389–90; *supra* II.A.

### D.      Plaintiff's Claim for Constructive Discharge

Plaintiff alleges that Defendant's non-accommodation of her occupational asthma forced her to resign from her position as a Professor of Ceramics and, therefore, she should recover on a theory constructive discharge in addition to her statutory claims.  *See* Compl. ¶¶ 24–25; Pl.'s Mem. at 15.  Defendant responds that constructive discharge is not an independent cause of action upon which Plaintiff may recover.  *See* Def.'s Mem. at 10–11.  Consequently, because Defendant believes all Plaintiff's claims are time barred, Defendant submits that Plaintiff cannot maintain a claim of constructive discharge.  In the alternative, Defendant contends that the record does not support a claim for constructive discharge because (1) Plaintiff did not leave her job in response to the unclean environment, but rather, due to her unrelated surgery; and/or (2) Plaintiff did not leave her position within a reasonable time.  *Id.* at 11–12 (citing *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 172 (D.D.C. 2005)).  Plaintiff asserts that constructive discharge allegations are always questions of fact that must be left to the jury.  *See* Pl.'s Mem. at 15, 17.

"[A] constructive discharge occurs where the employer creates or tolerates discriminatory working conditions that would drive a reasonable person to resign."  *Walden v. Patient-Centered*

---

[10] The record does not indicate that Plaintiff's October 4, 2012, request was denied before October 6, 2012, or, if it was, that Plaintiff was *aware* of that denial before October 6, 2012.  Taking the facts in the light most favorable to Plaintiff, the court concludes that, at this stage in the litigation, Plaintiff's October 4, 2012, request for accommodation may still form the basis for a timely filed DCHRA claim.

*Outcomes Research Inst.*, 177 F. Supp. 3d 336, 376 (D.D.C. 2016) (alteration in original) (quoting *Katradis v. Dav-El of Wash.*, 846 F.2d 1482, 1485 (D.C. Cir. 1988)).   Plaintiff must show "that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment."   *Id.* (quoting *Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 102 (D.D.C. 2011)).   "'Aggravating factors' are those aspects of a discriminatory work environment that, by making the workplace so disagreeable, prevent the reasonable employee from seeking remediation on the job."   *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006).

To begin, claims of constructive discharge are not stand-alone causes of action. *See Hammel*, 79 F. Supp. 3d at 245.   "Rather, a constructive discharge claim is a component of a discrimination case or is relevant to the scope of potential recovery on discrimination or retaliation claims."   *Id.*   Therefore, to the extent Plaintiff argues her constructive discharge allegations present a stand-alone cause of action, her argument fails.   *See id.*; *Russ v. Van Scoyoc Assocs., Inc.*, 122 F. Supp. 2d 29, 35–36 (D.D.C. 2000).   Instead, the court construes Plaintiff's constructive discharge claim as a request that the scope of Plaintiff's potential recovery on her statutory failure-to-accommodate claims be evaluated in light of her allegations that she was forced to resign.   *See Hammel*, 79 F. Supp. 3d at 246.   To that end, summary judgment is inappropriate because Plaintiff may have brought timely statutory discrimination claims.   *See supra* II.A–C.

The court concludes that there also remains a genuine issue of material fact regarding whether Plaintiff resigned from her position in response to the unclean condition of the ceramics studio or for some non-discriminatory reason.   *Compare* Def.'s Mem. at 12–13, *with* Pl.'s Mem. at 16–17.   Plaintiff has put forward sufficient evidence that a reasonable jury could find Defendant intentionally discriminated against Plaintiff by knowingly failing to maintain the studio and office

in an OSHA-compliant condition; this deliberate unwillingness to maintain the studio created working conditions in which Plaintiff could not breathe and from which her doctor recommended she be removed; and Defendant's practice of non-accommodation over multiple years, including a recent denial of her request to teach through an online platform, was an aggravating factor that left Plaintiff no choice but to resign. Therefore, the court denies Defendant's Motion with respect to Plaintiff's allegations of constructive discharge. *See Elzeneiny*, 125 F. Supp. 3d at 28 (citing Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324 (1986)).

## IV.      CONCLUSION AND ORDER

In light of the foregoing, the court grants Defendant's Motion for Summary Judgment only insofar as it argues that Plaintiff's ADA claim is untimely as to requests for accommodation made prior to September 11, 2012; Plaintiff's RA claim is untimely as to requests made prior to April 30, 2011; and Plaintiff's DCHRA claim is untimely as to requests made prior to October 6, 2012. Defendant's Motion is otherwise denied.


Dated:  December 6, 2016                        Amit P. Mehta
                                                United States District Judge